UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STATE OF MAINE,<br><br>*Plaintiff*,<br><br>v.<br><br>BP P.L.C.;<br>BP AMERICA INC.;<br>BP ENERGY COMPANY;<br>BP ENERGY RETAIL LLC;<br>BP PRODUCTS NORTH AMERICA INC.;<br>CHEVRON CORPORATION;<br>CHEVRON U.S.A. INC.;<br>EXXON MOBIL CORPORATION;<br>EXXONMOBIL OIL CORPORATION;<br>EQUILON ENTERPRISES LLC d/b/a SHELL OIL PRODUCTS US;<br>SHELL TRADING (US) COMPANY;<br>SHELL P.L.C.;<br>SHELL USA, INC.;<br>SUNOCO LP; and<br>AMERICAN PETROLEUM INSTITUTE,<br><br>*Defendants*. | Civil Action No. 2:25-cv-00001-NT<br><br>Hon. Nancy Torresen |

## THE STATE OF MAINE'S REPLY IN SUPPORT OF ITS MOTION TO REMAND

Plaintiff, State of Maine ("State" or "Maine"), for its Reply in Support of Its Motion to Remand, states as follows.

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT .................................................................................................................... 1

   A.  Defendants Do Not, and Cannot, Show the State Brought This Suit
       "For or Relating To" Anything Defendants Did Under Federal Direction. ................. 1

       1.  Defendants Cannot Circumvent the Nexus Element by Rewriting the
           Charged Conduct for Which They Are Being Sued. .......................................... 1

       2.  *Rhode Island I* is Binding Precedent and Defendants' Efforts to Distinguish
           it Fail. ................................................................................................................. 5

       3.  The State's Disclaimer Leaves Defendants with No Grounds For Removal. .... 7

   B.  Defendants Also Have Not Acted Under Federal Authority. ....................................... 8

   C.  Defendants Have Shown No Colorable Federal Defense. .......................................... 11

   D.  The Court Should Award Just Fees and Costs. .......................................................... 12

III. CONCLUSION ............................................................................................................... 12

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Annapolis v. BP P.L.C.*,
2022 WL 4548226 (D. Md. Sept. 29, 2022) ............................................................................... 7

*Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*,
48 F.3d 576 (1st Cir. 1995) ........................................................................................................ 3

*Arlington v. Express Scripts Pharmacy, Inc.*,
996 F.3d 243 (4th Cir. 2021) ................................................................................................... 10

*Baker v. Atl. Richfield Co.*,
962 F.3d 937 (7th Cir. 2020) .......................................................................................... 8, 10, 12

*Baltimore, v. BP P.L.C.*,
31 F.4th 178 (4th Cir. 2022) ....................................................................................... 3, 8, 9, 10

*Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
5 F.4th 1238 (10th Cir. 2022) ................................................................................................ 9, 11

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988) ................................................................................................................. 12

*Charleston v. Brabham Oil Co., Inc.*,
2023 WL 11867279 (D.S.C. July 5, 2023) .............................................................................. 12

*City of New York v. Chevron Corp.*,
993 F.3d 81 (2d Cir. 2021) ........................................................................................................ 3

*City of New York v. Exxon Mobil Corp.*,
733 F. Supp. 3d 296 (S.D.N.Y. 2024) ..................................................................................... 12

*Connecticut v. Exxon Mobil Corp.*,
83 F.4th 122 (2d Cir. 2023) ........................................................................................ 6, 7, 9, 11

*Anne Arundel v. BP P.L.C.*,
94 F.4th 343 (4th Cir. 2024) .............................................................................................. passim

*District of Columbia v. Exxon Mobil Corp.*,
89 F.4th 144 (D.C. Cir. 2023) ................................................................................................ 7, 9

*Delaware v. BP Am. Inc.*,
578 F. Supp. 3d 618 (D. Del. 2022) ........................................................................... 2, 3, 7, 11

*Exxon Mobil Corp. v. U.S.*,
2020 WL 5573048 (S.D. Tex. Sept. 16, 2020) .......................................................................... 9

*Hoboken v. Chevron Corp.*,
45 F.4th 699 (3d Cir. 2022) .............................................................................................. 6, 7, 9

*Honolulu v. Sunoco LP*,
2021 WL 531237 (D. Haw. Feb. 12, 2021) ............................................................................... 2

*Honolulu v. Sunoco LP*,
  39 F.4th 1101 (9th Cir. 2022) ................................................................................ 6, 9

*Jefferson Cnty. v. Acker*,
  527 U.S. 423 (1999) ................................................................................................ 2, 3

*Latiolais v. Huntington Ingalls, Inc.*,
  951 F.3d 286 (5th Cir. 2020) ...................................................................................... 10

*Makah Indian Tribe & Shoalwater Bay Indian Tribe v. Exxon Mobil Corp.*,
  2025 WL 913767 (W.D. Wash. March 26, 2025) ........................................................ 1

*Martin v. Franklin Cap. Corp.*,
  546 U.S. 132 (2005) ..................................................................................................... 12

*Maryland v. 3M Co.*,
  130 F.4th 380 (4th Cir. 2025) ...................................................................................... 3

*Minnesota v. Am. Petroleum Inst.*,
  63 F.4th 703 (8th Cir. 2023) ........................................................................................ 7

*Minnesota. v. Am. Petroleum Inst.*,
  2021 WL 1215656 (D. Minn. Mar. 31, 2021) ..................................................... 2, 7, 8

*Moore v. Elec. Boat Corp.*,
  25 F.4th 30 (1st Cir. 2022) ....................................................................................... 1, 2

*Multnomah v. Exxon Mobil Corp.*,
  2024 WL 1991554 (D. Or. Apr. 10, 2024) ................................................................. 12

*Oakland v. BP PLC*,
  2022 WL 14151421 (N.D. Cal. Oct. 24, 2022) ........................................................... 10

*Oakland v. BP PLC*,
  2023 WL 8179286 (9th Cir. Nov. 27, 2023) ................................................................. 9

*Pizzeria Uno Corp. v. Pizza by Pubs, Inc.*,
  2011 WL 4020845 (D. Mass. Sept. 9, 2011) ................................................................ 3

*Puerto Rico v. Express Scripts, Inc.*,
  119 F.4th 174, (1st Cir. 2024) ............................................................................... passim

*Raoul v. 3M Co.*,
  111 F.4th 846 (7th Cir. 2024) ........................................................................................ 8

*Rhode Island v. Shell Oil Prods. Co.* (*Rhode Island I*),
  979 F.3d 50 (1st Cir. 2020) .................................................................................... passim

*Rhode Island v. Shell Oil Prods. Co.* (*Rhode Island II*),
  35 F.4th 44 (1st Cir. 2022) ................................................................................... 5, 6, 12

*Roberts v. Smith & Wesson Brands, Inc.*,
  98 F.4th 810 (7th Cir. 2024) ......................................................................................... 10

*San Mateo v. Chevron Corp.*,
  32 F.4th 733 (9th Cir. 2022) ..................................................................................... 9, 11

*St. Augustine Sch. v. Underly*,
  78 F.4th 349 (7th Cir. 2023) ........................................................................................... 3

*Winters v. Diamond Shamrock Chem. Co.*,
  149 F.3d 387 (5th Cir. 1998) ....................................................................................... 10

**Statutes**

28 U.S.C. § 1447(c) ........................................................................................................ 12

**Rules**

Fed. R. App. P. 39 ........................................................................................................... 12

I.     INTRODUCTION

Defendants fail to satisfy a single element of federal officer removal because they (1) cannot show the State's charged conduct relates to anything Defendants did at federal direction, (2) have not "acted under" federal authority, and (3) lack any colorable defense. Contrary to Defendants' improper recasting, the charged conduct in Maine's Complaint is Defendants' deception and failure to warn Maine residents about the harms Defendants knew would befall Maine because of Defendants' fossil fuel products. The Court need not credit Defendants' theory of the case seeking removal because it is based on Defendants' willful attempt to fabricate claims that do not exist. Further, the Complaint's legitimate disclaimer renounces any claims upon which federal officer removal was purportedly based. Binding First Circuit precedent requires remand, and every federal court to consider removal of state-law claims brought by a sovereign entity challenging fossil-fuel companies' deception about climate change has granted remand—including another court in March.[1] Just costs and fees are warranted because Defendants' unreasonably ask this Court to contravene controlling precedent and become a national outlier among federal courts.

II.    ARGUMENT

Defendants have the burden of demonstrating each of the three prongs required for federal officer removal, *Moore v. Electric Boat Corp.*, 25 F.4th 30, 34 (1st Cir. 2022), but fail on all fronts.

    **A.  Defendants Do Not, and Cannot, Show the State Brought This Suit "For or Relating To" Anything Defendants Did Under Federal Direction.**

        **1.  Defendants Cannot Circumvent the Nexus Element by Rewriting the Charged Conduct for Which They Are Being Sued.**

Under clearly established authority, federal officer removal is only warranted if the

---

[1] *See, e.g.*, Mot. at 1 & n.1; *Makah Indian Tribe & Shoalwater Bay Indian Tribe v. Exxon Mobil Corp.*, 2025 WL 913767, *1 (W.D. Wash. March 26, 2025) (consolidated order) (concluding "federal jurisdiction is absent here" and "hold[ing] otherwise would elevate form over substance and improperly federalize state-law claims").

1

"*charged conduct*" relates to "the asserted official authority." *Moore*, 25 F.4th at 34 (emphasis added); *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (requiring "a nexus . . . between the *charged conduct* and asserted official authority" (emphasis added)). The Complaint charges that Defendants engaged in a decades-long campaign to deceive Maine consumers and failed to warn Mainers about the harms Defendants knew would impact Maine because of Defendants' fossil fuel products. *E.g.*, Compl. ¶¶ 4–8, 15. Defendants do not—and cannot—point to any evidence showing their deception and failure to warn was done under the control of federal officers. Defendants instead misconstrue controlling law by insisting the Court must ignore the Complaint's actual charged conduct and defer to Defendants' self-serving "theory of the case." Opp. at 10–14. But no federal forum is available where, as here, a defendant seeks to remove "claims that simply do not exist." *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024).

In cases nearly identical to Maine's, courts have repeatedly rejected defendants' re-characterization of deceptive marketing and failure to warn claims as being about fossil fuel production and global emissions. This Court should do the same. The purported claims Defendants concoct to remove this case are not charged in the Complaint. And no rule "authorize[s] Defendants to freely rewrite the complaint and manufacture a cause of action explicitly disclaimed by Plaintiff and then ask the Court to accept their 'theory of the case' for purposes of removal." *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 636 n.21 (D. Del. 2022), *aff'd*, 45 F.4th 699 (3d Cir. 2022). "[I]f Defendants had it their way, they could assert *any* theory of the case, however untethered to the claims of [Maine], because this Court must 'credit' that theory"—but that is not the law. *Honolulu v. Sunoco LP*, 2021 WL 531237, at *7 (D. Haw. Feb. 12, 2021), *aff'd*, 39 F.4th 1101 (9th Cir.

2

2022); *Minnesota. v. Am. Petroleum. Inst.*, 2021 WL 1215656, at *5 (D. Minn. Mar. 31, 2021), *aff'd*, 63 F.4th 703 (8th Cir. 2023).[2]

Indeed, Defendants "misunderst[and] the[ir] cited cases." *Delaware*, 578 F. Supp. 3d at 636 n.21; *id.* at 638.[3] The First Circuit explained in *Express Scripts* that courts credit a removing defendant's "well-pleaded allegations" only "[t]o the extent the parties raise factual disputes about the scope of a defendant's federal obligations." 119 F.4th at 189. But that rule does not apply here. Maine does not challenge the factual allegations in the Notice of Removal ("NOR") but rather explains why those allegations fail to establish jurisdiction as a matter of law even if accepted in full. Here, Defendants raise disputes about "claims that simply do not exist." *Id.* at 187.[4]

To evade this controlling precedent, Defendants say *Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025), instructs this Court to credit Defendants' theory of the case over the Complaint's actual charged conduct. Opp. at 12–13. But even under *Maryland*'s reasoning, Defendants cannot escape their burden of demonstrating "that the *conduct charged in the complaint* was taken for or

---

[2] Defendants' reliance on *City of New York v. Chevron Corp.*, 993 F.3d 81, 91 (2d Cir. 2021), Opp. at 11, is misleading and has been rejected by other courts. *E.g.*, *Baltimore v. BP P.L.C.*, 31 F.4th 178, 203 (4th Cir. 2022) ("*City of New York* does not pertain to the issues before us" because the case was filed in federal court on diversity jurisdiction grounds and the Second Circuit assessed an ordinary preemption defense on its own terms, not under the "heightened standard unique to the removability inquiry[.]"). *City of New York* is also irrelevant because the plaintiff sought to hold the defendants liable for "legal commercial conduct in producing and selling fossil fuels," such that they could not "avoid all liability" unless they "cease[d] global production altogether." 993 F.3d at 86, 93. That is not the charged conduct here, where the source of tort liability is Defendants' deception.

[3] Defendants' other citations are equally unavailing because those cases have nothing to do with removal jurisdiction, let alone interpreting the federal officer removal statute. *Compare* Opp. at 11–12, *with St. Augustine Sch. v. Underly*, 78 F.4th 349, 352, 356 (7th Cir. 2023) (explaining the difference "between a legal claim and a theory supporting relief" in the context of relinquishing supplemental jurisdiction); *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 583 (1st Cir. 1995) (evaluating whether "two separate suits involve[d] sufficiently identical causes of action" for purposes of *res judicata*); *Pizzeria Uno Corp. v. Pizza by Pubs, Inc.*, 2011 WL 4020845, at *7 (D. Mass. Sept. 9, 2011) (on a motion for summary judgment, evaluating whether a breach of contract affirmative defense was a "*kind* of claim" for the purpose of interpreting clauses in a franchise agreement).

[4] Defendants' reliance on *Jefferson County v. Acker* is also misguided. Opp. at 12. In *Acker*, whether there was a connection between the claims in the lawsuit and the defendants' official acts rested on disputed readings of an ordinance imposing occupational taxes, and the Supreme Court credited the defendants' reading because "[t]o choose between those readings of the Ordinance is to decide the merits of this case." 527 U.S. at 432. Maine does not challenge the NOR's factual allegations but rather shows why they do not establish jurisdiction, even if accepted as true.

in relation to asserted federal authority." 130 F.4th at 384 (emphasis added) (citing *Anne Arundel v. BP P.L.C.*, 94 F.4th 343, 347–48 (4th Cir. 2024); *see also Express Scripts*, 119 F.4th at 186.[5] The "charged conduct"—meaning the wrongful act alleged against a defendant—is defined by the allegations in the complaint, not by the defendant's self-serving recharacterization of those allegations. In the Fourth Circuit's own words, "[i]t is the 'act' for which the defendant is being sued . . . that must relate to the asserted federal duty," which is "the conduct charged in the Complaint." *Anne Arundel*, 94 F.4th at 348 (quotations omitted). Defendants have not pointed to any evidence showing they engaged in deceptive marketing under the authority or control of a federal officer. The theory they would have the Court credit is unrelated to the charged conduct.

The decision in *Rhode Island v. Shell Oil Products Co.* ("*Rhode Island I*") explains this. 979 F.3d 50 (1st Cir. 2020). The defendants there argued, just as Defendants do here, that Rhode Island "s[ought] damages for harms allegedly caused by global greenhouse gas emissions," and that federal officer removal was proper because "emissions attributable to Defendants' production of oil and gas under the direction of the federal government have precisely the same alleged impact on Plaintiff as do emissions from any other source." NOR ¶ 3; Opp. at 2; *Rhode Island I*, 979 F.3d at 59–60. The First Circuit disagreed and affirmed remand, holding that there was "simply no nexus between" defendants' "misinformation campaign" and "anything [they] allegedly did at the behest of a federal officer." *Id*. The two are not intermingled or intertwined.

*Express Scripts* also explains this. Although *Express Scripts* reversed an order granting remand (on entirely different facts), it followed the same reasoning as *Rhode Island I* and recognized that the relevant charged conduct is the defendant's conduct for which the plaintiff

---

[5] *Maryland* was wrongly decided by a split panel, and a petition for *en banc* review is pending. In *Anne Arundel*, the Fourth Circuit rejected the defendants' request to "look beyond the face of the complaint[]" and find that the plaintiff's "injuries [arise] from the companies' production and sale of fossil fuels" as being foreclosed by clear precedent. 94 F.4th at 350.

4

seeks relief. *Express Scripts*, 119 F.4th at 192 ("[Plaintiff] claims that how Caremark negotiated rebates inflated insulin prices. But *this 'charged conduct'* is alleged to be indivisibly federal and nonfederal." (emphasis added)). Maine's charged conduct about Defendants' deception has no relation to Defendants' alleged bases for federal officer control. The two are plainly divisible.

Here, just as in *Rhode Island I*, the conduct charged in Maine's Complaint is Defendants' deceptive marketing of fossil fuels, *e.g.*, Compl. ¶¶ 4, 8, 15, not the mere production or distribution of fossil fuels. And just as in *Rhode Island I*, Defendants do not allege federal officers influenced their marketing activities at all. Maine's claims thus do not relate to anything Defendants allegedly did at federal direction, and federal officer removal is improper.

### 2. *Rhode Island I* is Binding Precedent and Defendants' Efforts to Distinguish it Fail.

Defendants' attempts to distinguish *Rhode Island I* all fail. First, Defendants' "additional grounds for removal not considered in *Rhode Island*," Opp. at 3, do not cure the core flaw the First Circuit identified: the absence of any federal control related to Defendants misleading or failing to warn Mainers. *Rhode Island I*, 979 F.3d at 60; *see also Rhode Island v. Shell Oil Prods. Co.* (*Rhode Island II*), 35 F.4th 44, 53 n.6 (1st Cir. 2022) (same). Here, as in *Rhode Island I*, the "contracts the oil companies invoke as the hook for federal-officer jurisdiction mandate none of" the "misinformation campaign" that is the basis for Maine's Complaint. 979 F.3d at 60.

Second, Defendants highlight "additional and detailed evidence not presented in *Rhode Island*," Opp. at 3, but Defendants have already presented all but three of those additional exhibits to other courts, all of which uniformly rejected Defendants' arguments based on that evidence.

5

Mot. at 2 & n.2.[6] Defendants in similar cases have relied on the production and distribution of specialized fuels to the U.S. military and leases for oil extraction in the Outer Continental Shelf ("OCS") to justify removal. *Id.* at 15. In each of those cases, courts have rejected Defendants' claims that this evidence provides a basis for federal jurisdiction. *Id.*

Third, Defendants argue the First Circuit's decision was limited to oil and gas produced and sold in Rhode Island. Opp. at 3, 15. That is incorrect. Rhode Island's complaint, like Maine's, alleged that Defendants' deception inflated demand for their fossil fuel products inside and outside the state, exacerbating climate change and injuring the state. *See* Decl. of Stephanie Biehl, Ex. A at 60 ¶ 19 ("Accounting for their wrongful promotion and marketing activities, Defendants bear a dominant responsibility for global warming generally, and for Plaintiff's injuries in particular."). The First Circuit accepted Rhode Island's allegations that the defendants "misled the public about their products' true risks" and "engaged in a misinformation campaign" without geographic limitation, just as alleged here. 979 F.3d at 53, 60; *see also Rhode Island II*, 35 F.4th at 54. Defendants' insistence that Maine must limit the scope of its remedies in light of *Rhode Island I*, Opp. at 3 n.1, fails for the same reasons as above.

Finally, Defendants argue that the court in *Rhode Island I* would have reached a different result had defendants presented evidence of their "distribution" of petroleum products. *Id.* at 3, 15. While that issue was not before the court in *Rhode Island I*, it is irrelevant because Defendants'

---

[6] Defendants say the State "incorrect[ly]" suggested that only three of Defendants' exhibits were absent from the record in *Rhode Island I*. Opp. at 3. That is false. The State's Motion stated that "Defendants previously relied on all but three of the 85 exhibits to their NOR in *one or more of their unsuccessful bids for removal*," and that "courts have already evaluated" those exhibits. Mot. at 2 & n.2 (emphasis added). The Motion *did not* say that all those exhibits were in the record in *Rhode Island I*, and they were not. But the exhibits *have been considered* by the Second, Third, Fourth, and Ninth Circuits and *were found lacking*. *E.g.*, *Anne Arundel*, 94 F.4th at 349 ("[T]he companies assert the expanded factual record and broader range of presented activities here show" that "those activities 'necessarily relate' to the local governments' claims. . . . We are not convinced."); *Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022); *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 142–145 (2d Cir. 2023); *Hoboken v. Chevron Corp.*, 45 F.4th 699, 712 (3d Cir. 2022).

6

sales of fossil fuels to the military are "explicitly not a part of [Maine's] case[.]" *Rhode Island I*, 979 F.3d at 60; Compl. ¶¶ 17–18. Furthermore, courts have examined the issue and held that such military fuel sales do not relate to the deceptive marketing alleged in analogous climate deception suits. *E.g.*, *Anne Arundel*, 94 F.4th at 349; *Connecticut*, 83 F.4th at 145; *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 156 (D.C. Cir. 2023); *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023). Like in *Rhode Island I*, there is simply no nexus between anything for which Maine seeks damages and anything Defendants allegedly did at the behest of a federal officer.

### 3. The State's Disclaimer Leaves Defendants with No Grounds For Removal.

Even if there were any meaningful relationship between the State's claims and federal authority—there is not—the Complaint's express disclaimer ruptures that link. The First Circuit has squarely held that a disclaimer "will prevent removal" where it "clearly carve[s] out certain factual bases" for liability "such that any alleged injury could not have happened under the direction of a federal officer." *Express Scripts*, 119 F.4th at 187 (cleaned up).

That is exactly what Maine's disclaimer does: It expressly "disclaims injuries" and "seeks no recovery or relief attributable to" or "arising from Defendants' provision of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes." Compl. ¶ 18. The State also "does *not* seek relief with respect to any federal property, land or assets." *Id.* ¶ 17. Maine's disclaimer leaves no possibility for recovery based on work Defendants may have done under federal authority, and courts considering substantially similar climate deception lawsuits have uniformly agreed. *E.g.*, *Hoboken*, 45 F.4th at 713 (affirming remand and affirming that materially identical disclaimers were "no ruse").[7]

---

[7] *Annapolis v. BP P.L.C.*, 2022 WL 4548226, at *8 (D. Md. Sept. 29, 2022), *aff'd*, 94 F.4th 343 (4th Cir. 2024); *Delaware*, 578 F. Supp. 3d at 635; *Minnesota*, 2021 WL 1215656, at *11.

7

None of Defendants' citations disturb the State's legitimate disclaimer. As Maine already explained, Mot. at 9, the defendants in *Express Scripts* negotiated contracts for private and governmental health insurance plans in a single simultaneous negotiation, making it impossible to distinguish conduct done under government direction. 119 F.4th at 181, 190–91. That is not true here. The State's charged conduct is Defendants' "concealment or misrepresentation of information about fossil fuel products," not anything else, *Anne Arundel*, 94 F.4th at 349, which is unrelated to any of Defendants' purported conduct under federal authority, *id.* at 348 ("We begin by rejecting the companies' novel and atextual attempt to expand the scope of the relevant inquiry" to include "their 'extraction and production of fossil fuels.'"); *Minnesota*, 2021 WL 1215656, at *11; *see also Rhode Island I*, 979 F.3d at 60. Defendants' assertion about comingled emissions ignores the charged conduct in the Complaint, and their other citations are inapposite. Opp. at 16–18.[8] Maine's disclaimer is of precisely the type *Express Scripts* authorizes. 119 F.4th at 187.

## B. Defendants Also Have Not Acted Under Federal Authority.

Defendants cannot show they acted under federal authority, but argue they did by (1) producing and distributing petroleum products during World War II ("WWII") and the Korean War; (2) producing and distributing specialized fuels, such as aviation fuels; and (3) producing oil and gas on the OCS. Opp. at 6–9. Courts of appeals in five circuits have already rejected

---

[8] The disclaimer at issue in *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 945 n.3 (7th Cir. 2020), is similarly distinguishable. The *Baker* plaintiffs' disclaimer was ineffective because it contradicted their theory of liability; the plaintiffs sought to recover for lead and arsenic contamination of their homes, while asserting that their claims did not "pertain to" earlier government-controlled conduct at the same site that indisputably led to releases of lead and arsenic. *Id.* at 941. Like *Express Scripts*, the *Baker* disclaimer did not exclude the possibility that the plaintiffs could recover for federally directed conduct. *Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024), is also irrelevant because its holding is limited to crediting a broad disclaimer made for the first time at oral argument on appeal. The *Raoul* dictum Defendants cite makes no difference because *Express Scripts* requires this Court to credit express disclaimers like Maine's. 119 F.4th at 187. *Maryland* does not change how binding First Circuit precedent forecloses federal officer removal here, *Rhode Island I*, 979 F.3d at 59–60, and squarely approves disclaimers that "clearly carve out certain factual bases" for liability, *Express Scripts*, 119 F.4th at 187, which is what Maine's disclaimer does. Compl. ¶¶ 17–18. And *Maryland* does not change how the Fourth Circuit twice held there was no federal-officer jurisdiction over climate-deception cases similar to Maine's. *Baltimore*, 31 F.4th at 228-38; *Anne Arundel*, 94 F.4th at 347–51.

Defendants' claims that they were "acting under" a federal officer's authority when engaging in this conduct,[9] and the State already explained in detail why some Defendants have merely alleged that they at times (a) complied with generally applicable legal obligations or (b) entered arm's-length business transactions with federal agencies. Mot. at 9–19.[10]

***WWII and Korean War.***[11] Defendants' WWII and Korean War era activities do not demonstrate any nexus with Maine's Complaint because they have nothing to do with Defendants' deceptive marketing and because Maine disclaimed them. Compl. ¶ 18. Nor do Defendants address the fact that their activities during WWII and the Korean War predate the deceptive "charged conduct" alleged in the Complaint by decades. *E.g.*, Compl. ¶¶ 96–134; *Anne Arundel*, 94 F.4th at 349; *Connecticut*, 83 F.4th at 144; *District of Columbia*, 89 F.4th at 156. And although Defendants' assertion that they acted under "directives" is meant to conjure images of close control, Opp. at 6, the underlying facts already rejected by multiple courts show that Defendants were "simply complying with the law," which is insufficient to substantiate federal officer removal jurisdiction. *E.g.*, *Baltimore*, 31 F.4th at 229; *Honolulu*, 39 F.4th at 1107–08. Defendants' 1945 quote from Senator O'Mahoney does not alter the fact that the Defendants were engaging in "arm's-length business deal[s]" with the government, not subjection or control. *Id.* at 1108; Opp. at 6.

***Specialized Fuels for Military Use.*** Defendants fail to address the deficiencies about

---

[9] *Connecticut*, 83 F.4th at 142–45; *Hoboken*, 45 F.4th at 712–13; *Anne Arundel*, 94 F.4th at 347–50; *Baltimore*, 31 F.4th at 228–37; *San Mateo v. Chevron Corp.*, 32 F.4th 733, 755–60 (9th Cir. 2022); *Honolulu*, 39 F.4th at 1106–10; *Oakland v. BP PLC*, 2023 WL 8179286, at *2 (9th Cir. 2023); *Boulder Cnty. v. Suncor Energy (U.S.A.), Inc.*, 25 F.4th 1238, 1250–54 (10th Cir. 2022).

[10] Defendants' ongoing reliance on *Exxon Mobil Corp. v. United States* is misplaced because that CERCLA decision has nothing to do with federal officer jurisdiction, the portions of the decision Defendants rely on show at most that Defendants "compl[ied] with . . . Petroleum Administration for War directive[s]," and the court concluded in relevant part that "the government's involvement in [certain avgas] refineries falls short of that necessary for liability as an operator" under CERCLA. 2020 WL 5573048, at *12, 47–48 (S.D. Tex. Sept. 16, 2020).

[11] Defendants also baldly say they acted under federal authority by interacting with government-owned or -funded facilities and distribution pipelines, Opp. at 6, but they do not substantiate that assertion in any way.

9

specialized fuels that were explained in the State's Motion. Opp. at 7–8. Moreover, Maine has validly disclaimed any relief arising from Defendants' sales of non-commercial, specialized fuels to the military. Compl. ¶ 18. And the service-member quotes about the importance of Defendants' specialized products, Opp. at 7–8; Dick Decl. Exs. 15 & 17, do not alter the fact that arm's-length sales to the government without close control or supervision cannot support jurisdiction. *See Roberts v. Smith & Wesson Brands, Inc.*, 98 F.4th 810, 813 (7th Cir. 2024).

Contrary to Defendants' assertion, the government "set[ing] forth detailed [product] specifications" for items it purchases does not mean the seller was "acting under" a federal superior. *Baltimore*, 31 F.4th at 231, *compare* Opp. at 7–8 & n.4.[12] "Arm's length business agreements with the federal government for highly specialized products remain arm's length business agreements" that fail to substantiate that Defendants acted under federal authority. *Oakland v. BP P.L.C.*, 2022 WL 14151421, at *8 (N.D. Cal. Oct. 24, 2022). Defendants' Opposition and NOR fail to demonstrate "the type of close supervision . . . exercised [with] intense direction and control over all written documentation . . . [and product] development." *Baltimore*, 31 F.4th at 231 (citations omitted); *Baker*, 962 F.3d at 942–43. Defendants' cases do not suggest otherwise.[13]

---

[12] In a footnote, defendants reiterate previously failed arguments about fuel contracts involving spy plane and OXCART programs and about JP-5 and JP-8 fuels. Opp. at 7 n.4. But Nothing in the contracts suggests the government exerted close control over the Defendants or oversaw the manufacturing process itself.

[13] In *Baker v. Atlantic Richfield Co.*, the government "required" production of the relevant products, controlled who could buy those products, "restricted or prohibited the use" of the products in "most civilian" applications, and "effectively prevented [the defendant] from selling its products to distributors for civilian use." 962 F.3d at 940–41. The government also "closely controlled the plant's operation, approving the plans, designs, and schedules for manufacturing." *Id.* That level of control is absent from Defendants' myriad exhibits. In *Smith & Wesson*, 98 F.4th at 813, the court rejected federal officer removal and stated, "'the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail' does not satisfy § 1442." In *Arlington v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253 (4th Cir. 2021), the court found the pharmaceutical defendants were "acting as the statutorily authorized *alter ego* of the federal government" and the court expressly distinguished that "unusually close relationship" from the same types of fossil fuel contracts at issue here. The contractual provisions in *Winters v. Diamond Shamrock Chemical Co.*, "indicate[d] that the government maintained strict control over the development and subsequent production of Agent Orange," which is a far cry from the types of fossil fuel agreements here. 149 F.3d 387, 399 (5th Cir. 1998), *modified by Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020).

*Mineral Resources in the Outer Continental Shelf.*[14] The First Circuit has already rejected Defendants' argument that oil extraction in the OCS is a basis for federal officer removal. In *Rhode Island I*, the Court found that there is "simply no nexus" between Defendants' OCS drilling leases and "anything for which Rhode Island seeks damages," and stated that there is "no 'close supervision' of this extraction or production of oil 'specially conformed to government use.'" 979 F.3d at 59–60. That binding precedent enjoys substantial support from other courts. *Connecticut*, 83 F.4th at 143; *Hoboken*, 45 F.4th at 713; *Boulder*, 25 F.4th at 1253; *Delaware*, 578 F. Supp. 3d at 638; *San Mateo*, 32 F.4th at 759. And Defendants' purported new evidence and declaration of Professor Priest, Opp. at 9; Dick Decl. Ex. 58, do not change anything, as they have been uniformly rejected by every court that has considered them, *see generally* Mot. at 14–16.

At bottom, none of the conduct that Defendants invoke to assert federal authority involves deceptive marketing—or any marketing at all—closely controlled by the federal government.

### C.     Defendants Have Shown No Colorable Federal Defense.

This Court need not address whether Defendants have a colorable defense because Defendants have failed to meet their burden with respect to the other two elements of federal officer removal. *See Boulder*, 25 F.4th at 1254. But their arguments here fare no better. For the reasons detailed in the Motion, Defendants' defenses are not colorable. Mot. at 19–20.

Defendants reiterate their federal contractor and immunity arguments,[15] but neither is relevant to the State's claims, and both have been rejected by courts on nearly identical facts. *E.g.*, *Honolulu*, 39 F.4th at 1110 (holding *Boyle*'s contractor defense inapposite and rejecting the immunity argument). Defendants acknowledge that *Boyle*'s federal contractor defense is about

---

[14] Although Defendants' Opposition baldly refers to fossil fuel extraction on "federal lands," Opp. at 8, they do not substantiate that assertion in any meaningful way. The Motion refutes this basis for removal. *See* Mot. at 17.

[15] Defendants claim to incorporate every defense from the NOR but they make no arguments about them. Opp at 19.

11

"design defects in military equipment," Opp. at 19, which has no bearing on this case about deceptive marketing. Maine's claims do not challenge "the nature or quality of [Defendants'] goods," *Baker*, 962 F.3d at 946, or Defendants' "performance" of any federal contract, *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504–14 (1988). Defendants' invocation of immunity fails for similar reasons. Defendants may have "produced oil and gas at the direction of the federal government," Opp. at 19, but their deceptive marketing practices were not performed at the direction of the government. As such, Defendants have not raised a colorable federal defense.

    **D.**    **The Court Should Award Just Fees and Costs.**

The unusual circumstances of Defendants' unreasonable removal justify costs and fees. Mot. at 20; 28 U.S.C. § 1447(c); *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *City of New York v. Exxon Mobil Corp.*, 733 F. Supp. 3d 296, 314–16 (S.D.N.Y. 2024). Defendants' purported authorities to the contrary are unavailing.[16] Their removal *in this case* and *in this circuit* is objectively unreasonable because the First Circuit has twice rejected many of these Defendants' federal officer removal efforts, which bar Defendants' removal as a matter of binding law. *Rhode Island I*, 979 F.3d at 59–60; *Rhode Island II*, 35 F.4th at 53 n.6. Defendants' unreasonableness is compounded by the myriad District Courts and Courts of Appeals that have soundly rejected the same or similar removal arguments. *E.g.*, Mot. at 1 n.1. Maine's just fees and costs are warranted.

**III.**    **CONCLUSION**

The Court should remand this case and award the State its just costs and fees.

---

[16] *See Multnomah v. Exxon Mobil Corp.*, 2024 WL 1991554, at *8 (D. Or. Apr. 10, 2024) (denying fees because fraudulent joinder and procedural misjoinder issues had only been raised in a single case outside the circuit); *Charleston v. Brabham Oil Co., Inc.*, 2023 WL 11867279, at *7 (D.S.C. July 5, 2023) (denying fees because defendants removed the case before the issuance of court opinions rejecting the asserted grounds for removal). Defendants also assert that the State's reliance on *Rhode Island II* for attorney's fees and costs is misleading because "[c]osts [were] automatically awarded under Federal Rule of Appellate Procedure 39" and not because removal was unreasonable. Opp. at 20 n.7. But that red herring ignores that these Defendants' removal is barred by two First Circuit decisions.

Dated: May 5, 2025

STATE OF MAINE

AARON M. FREY
ATTORNEY GENERAL


*/s/ Aaron M. Frey*
Aaron M. Frey (Bar No. 004325)
Scott W. Boak (Bar No. 009150)
Emma Akrawi (Bar No. 006343)
Valerie A. Wright (Bar No. 009166)
6 State House Station
Augusta, Maine 04333
(207) 626-8800

*/s/ Stephanie D. Biehl*
Victor M. Sher (*pro hac vice*)
Stephanie D. Biehl (*pro hac vice*)
Chase Whiting (*pro hac vice*)
Brittany Dutton (*pro hac vice*)
**SHER EDLING LLP**
100 Montgomery Street, Suite 1410
San Francisco, CA 94104
100 Montgomery St. Ste. 1410
San Francisco, CA 94104
Tel.: (628) 231-2500
vic@sheredling.com
stephanie@sheredling.com
cwhiting@sheredling.com
brittany@sheredling.com

Adam J. Levitt (*pro hac vice forthcoming*)
Daniel Rock Flynn (*pro hac vice*)
Anna Claire Skinner (*pro hac vice*)
Elizabeth Claire Carpenter (*pro hac vice*)
James T. Crisafulli (*pro hac vice*)
**DıCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
alevitt@dicellolevitt.com
dflynn@dicellolevitt.com
askinner@dicellolevitt.com

Katie R. Beran (*pro hac vice*)
Timothy L. Kelly (*pro hac vice*)
**HAUSFELD LLP**

13

        325 Chestnut Street, Suite 900
        Philadelphia, PA 19106
        Tel: (215) 985-3270
        kberan@hausfeld.com
        tkelly@hausfeld.com

        James Gotz (*pro hac vice*)
        **HAUSFELD LLP**
        One Marina Park Drive, Suite 1410
        Boston, MA 02210
        Tel: (617) 207-0600
        jgotz@hausfeld.com

        Ian Engdahl (*pro hac vice*)
        **HAUSFELD LLP**
        1200 17th Street N.W., Suite 600
        Washington, D.C. 20036
        Tel: (202) 540-7200
        iengdahl@hausfeld.com

        *Attorneys for the State of Maine, acting by and through the Attorney General*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused the foregoing to be filed with the Clerk of this Court via the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

Dated: May 5, 2025  /s/ Stephanie D. Biehl
Stephanie D. Biehl (*pro hac vice*)