# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| STATE OF MAINE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 2:25-cv-00001-NT |
| | ) |
| BP P.L.C., et al., | ) |
| | ) |
|     Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTION TO REMAND**

The State of Maine sued fourteen fossil fuel companies and their national trade association in state court, alleging they violated Maine law by knowingly deceiving the public about climate change. Maine's case is one of many similar suits brought by state and local governments in recent years that seek to hold energy companies responsible for failing to warn consumers about the climate impacts of fossil fuels.

After Maine sued, two of the Defendants removed the case from state to federal court under the "federal officer removal statute," 28 U.S.C. § 1442, citing various activities that the Defendants allegedly carried out under federal government direction. Before me is the State's motion (ECF No. 52) to remand to state court and recover costs and fees on the grounds that removal was "objectively unreasonable."

For the following reasons, the State's requests for remand and to recover costs and fees are both **GRANTED**.[1]

---

[1] Though the parties requested oral argument, I find a hearing is not necessary to resolve the remand motion. *See* D. Me. Local R. 7(e) ("Unless otherwise required by rule or statute, all motions may be decided by the Court without oral argument.").

## BACKGROUND

### I. The State's Complaint

In November of 2024, the State of Maine ("**Maine**" or the "**State**") sued BP P.L.C., Chevron Corporation, Exxon Mobil Corporation, Shell P.L.C., Sunoco LP, several subsidiaries, and the American Petroleum Institute (the "**Defendants**") in Maine Superior Court. Notice of Removal Ex. 1 ("**Compl.**") (ECF No. 1-1). The complaint asserts eight causes of action arising under Maine law: negligence, public and private nuisance, trespass, and civil aiding and abetting (all common law actions); statutory nuisance, 17 M.R.S. §§ 2701 & 2802; violations of the Maine Unfair Trade Practices Act, 5 M.R.S. §§ 205–14; and strict liability for failure to warn, 14 M.R.S. § 221. Compl. ¶¶ 334–457.

The complaint alleges that the Defendants committed these state law violations by, for the last half-century, deliberately misleading consumers and the public about climate change. *See, e.g.*, Compl. ¶¶ 55–56. According to the State, the Defendants have known since the 1950s that fossil fuels would eventually cause global warming and a host of "dramatic environmental effects." Compl. ¶ 69; *see, e.g.*, Compl. ¶¶ 57–68. And yet, despite that early and "sophisticated understanding," Compl. ¶ 55, the Defendants doubled down on fossil fuel production, failed to warn consumers about those risks, and lied to the public about the relationship between fossil fuels and climate change. Compl. ¶¶ 70–134. For example, the complaint describes how the Defendants funded "unqualified or unscrupulous scientists" to "discredit scientific consensus on climate change" and published "misleading" advertisements and op-eds in national papers. Compl. ¶¶ 127–28. The

2

complaint also asserts that the Defendants continue to mislead and misinform the public to this day, most recently by misrepresenting their investments in renewable energy sources and engaging in "greenwashing" campaigns that minimize their products' negative environmental impacts. Compl. ¶¶ 156–232.

The State asserts that the Defendants' tortious conduct has accelerated global warming and caused detrimental climate harms in Maine. Compl. ¶¶ 248–49. Those harms include rising air and ocean temperatures, rising sea levels, and extreme weather events, which in turn have caused "catastrophic" (and expensive) injuries throughout Maine, ranging from vector-borne diseases to the destruction of critical infrastructure to economic instability and rising unemployment. Compl. ¶¶ 248–333.

The complaint contains a disclaimer that makes clear that the State does *not* seek relief "with respect to any federal property, land or assets" or attributable to any injuries on federal property or from the Defendants providing fossil fuel products to the federal government. Compl. ¶¶ 17–18.

For relief, the State seeks an order enjoining the Defendants from further violations. Compl. at 202. It also seeks damages, civil penalties, disgorgement of profits, and other equitable relief. Compl. at 201–02.

## II.  Chevron's Notice of Removal and the State's Motion to Remand

After Maine sued, Chevron Corporation and a subsidiary (together, "**Chevron**"), with all the Defendants' consent, removed the action to this Court under the federal officer removal statute, 28 U.S.C. § 1442. Notice of Removal ("**NOR**") 1 (ECF No. 1). That statute permits any federal officer—or anyone "acting under" that

officer—to remove from state to federal court a civil action "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

The State then moved to remand on the grounds that the federal officer removal statute does not apply. State of Maine's Mem. of Law in Supp. of Its Mot. to Remand ("**Mot.**") (ECF No. 52). It argues, among other things, that Chevron's arguments are foreclosed by *Rhode Island v. Shell Oil Prods. Co., L.L.C.* ("***Rhode Island II***"), 35 F.4th 44 (1st Cir. 2022), which held that many of the same energy companies involved in this litigation (including Chevron) failed to satisfy the requirements of federal officer removal in a similar climate-deception suit. *See, e.g.*, Mot. 10–12; *see also Rhode Island II*, 35 F.4th at 53 n.6.[2]

The State also seeks to recover costs, fees, and expenses under 28 U.S.C. § 1447(c), pointing to decisions from this Circuit and many others that have rejected the same companies' attempts to remove related climate deception cases on the same grounds. Mot. 25. The State asserts that costs and fees are warranted by that track record, reasoning that Chevron's "baseless removal wastes judicial and State resources and serves no purpose other than delay." Mot. 6.

---

[2] The First Circuit issued two decisions in the *Rhode Island* litigation. It issued the first opinion in 2020, affirming the district court's remand order based on a lack of jurisdiction under the federal officer removal statute. *See Rhode Island v. Shell Oil Prods Co., L.L.C.* ("***Rhode Island I***"), 979 F.3d 50, 60 (1st Cir. 2020). After the Supreme Court vacated that decision and instructed the First Circuit to consider all removal grounds, the First Circuit issued a second opinion in 2022, which reinstated the federal officer removal analysis from *Rhode Island I*. *See Rhode Island v. Shell Oil Prods Co., L.L.C.* ("***Rhode Island II***"), 35 F.4th 44, 53 n.6 (1st Cir. 2022).

4

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Therefore, when a plaintiff files a state court action, a defendant may remove that action to federal court only if there is "some basis for federal jurisdiction." *Danca v. Priv. Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999).

Once a case is removed, a plaintiff can move to remand the action to state court based on a lack of jurisdiction. 28 U.S.C. § 1447(c). As the removing party, the defendant has the burden to show that removal was proper. *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 221 (D.N.H. 2023), *aff'd*, 132 F.4th 556 (1st Cir. 2025) (citation omitted). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction," remand is mandatory. 28 U.S.C. § 1447(c).

One potential source of removal jurisdiction is the federal officer removal statute, which permits any federal officer "or any person acting under that officer" to remove a civil action to federal court if the action is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). The statute is meant to "ensure a federal forum . . . where a federal official or private actors acting on that official's behalf may raise a defense arising out of his official duties." *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 185 (1st Cir. 2024) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)) (quotation marks omitted).

Section 1442(a)(1) "is broadly construed in favor of removal." *New Hampshire*, 665 F. Supp. 3d at 226 (citing *Watson v. Philip Morris Cos. Inc.*, 551 U.S. 142, 147–48

(2007)) (emphasis omitted). Accordingly, in deciding a remand motion based on federal officer jurisdiction, a court must "credit" the removing party's " 'theory of the case' for why removal under § 1442(a)(1) was appropriate" and accept the truth of all "allegations" in removal notice. *Puerto Rico*, 119 F.4th at 184, 189 (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)).

## DISCUSSION

### I. Federal Officer Removal

To avoid remand, Chevron must satisfy the three elements of federal officer removal by showing that: (1) the Defendants were "*acting under* a federal officer's authority"; (2) "the charged conduct was carried out *for or relating to* the asserted official authority"; and (3) the Defendants "will assert a *colorable federal defense* to the suit." *Puerto Rico*, 119 F.4th at 185 (citation omitted and emphases added).

Because I find Chevron fails to satisfy the second "for or relating to" element (sometimes called the "nexus" requirement), remand is mandatory, and I need not consider the other two requirements or the parties' arguments regarding the State's disclaimer.[3] *See Rhode Island v. Shell Oil Prods. Co., L.L.C.* ("**Rhode Island I**"), 979 F.3d 50, 59 (1st Cir. 2020) ("If the oil companies cannot demonstrate all three of these elements, they cannot remove the case to federal court under § 1442.").

---

[3] The State argues that even if Chevron could satisfy the elements of federal officer removal, remand would be mandatory because the complaint includes an express disclaimer of any potential grounds for federal jurisdiction. *See* Compl. ¶¶ 16–19. Because I find Chevron does not satisfy those elements, I need not address the State's disclaimer or Chevron's arguments as to why that disclaimer is ineffective. *See* Mot. 12–14; Opp'n 19–22. *Cf. Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 189–90 (1st Cir. 2024) ("Before addressing the effectiveness of the Commonwealth's disclaimer, we briefly consider Caremark's case for removal under § 1442(a)(1) absent the disclaimer.").

6

### A. The "Nexus" Requirement

To satisfy the second element of federal officer removal, a defendant must show that "the charged conduct" was carried out "for or relating to" the official authority asserted. *Puerto Rico*, 119 F.4th at 186 (citation omitted). This "relating to" element requires showing a "nexus" between "the allegations in the complaint and conduct undertaken at the behest of a federal officer," but it "is not a causation requirement." *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 n.2 (1st Cir. 2022) (citations omitted). Instead, a defendant can satisfy this requirement by showing that the "charged conduct" at least shares a "connection" or "association" with the asserted federally directed activities. *Id.* at 35 & n.4 (citations omitted); *Puerto Rico*, 119 F.4th at 186.

As to the asserted federal activities, Chevron says that the Defendants have "perform[ed] critical and necessary functions for the U.S. military to further the national defense" and have done so "pursuant to government mandates, leases, and contracts under federal direction, supervision, and control." NOR ¶ 19. These asserted "functions" all involve producing and distributing fossil fuels for the federal government. For example, Chevron asserts that the Defendants (1) produced and distributed petroleum products under specific government directions for use by the U.S. military; (2) managed government-owned petroleum facilities and government-owned petroleum; (3) extracted gasoline on federally regulated land under leases issued by the federal government; (4) built oil transportation pipelines for national defense purposes; and (5) operated and leased oil pipelines and terminals owned by the federal government subject to federal regulation. NOR ¶ 19.

7

I find that none of those asserted federal activities shares the required nexus with the misconduct that gives rise to the causes of action in the complaint. That misconduct is *not* the Defendants' production or distribution of fossil fuel products, but rather their acts of "deceiving consumers and the public about climate change." Compl. ¶ 20; *see also* Mot. 11 (stating that the complaint asserts liability for "deceptive marketing," not "extracting and producing fossil fuels"). As the State points out, Chevron has not even attempted to argue that "any federal officer controlled or influenced [the Defendants'] alleged deceptive marketing practices, or any aspect of their marketing at all." Mot. 11. Absent such allegations, Chevron fails to establish the required nexus between the misconduct alleged by the State and the activities it claims to have carried out under federal direction.

This conclusion is consistent with the First Circuit's analysis in *Rhode Island I*, in which the state asserted various claims (public nuisance, product liability, trespass, impairing public trust resources, and violating state environmental laws) based on allegations that "the oil companies knew what fossil fuels were doing to the environment and continued to sell them anyway, all while misleading consumers" about those products' "true impact." 979 F.3d at 54. The defendants removed the action under the federal officer removal statute (among other grounds), citing some but not all of the federal activities that Chevron cites in the case before me. *Id.* at 59. In affirming remand, the First Circuit reasoned that there was no nexus between the state's claims and the federally directed activities, emphasizing that the cited federal contracts did not "mandate" the conduct at issue: the defendants' deceptive marketing

8

and misinformation campaigns. *Id.* at 59–60; *see also id.* at 60 ("There is simply no nexus between anything for which Rhode Island seeks damages and anything the oil companies allegedly did at the behest of a federal officer.").

Chevron's various attempts to distinguish the *Rhode Island* litigation are unsuccessful. For example, Chevron says it has identified seven new federal activities not previously asserted in *Rhode Island I*, and as to the one ground already asserted, it has produced "additional and detailed evidence" of the "close" degree of federal supervision and direction. NOR ¶ 5; Opp'n to Pl.'s Mot. to Remand ("**Opp'n**") 7, 10–14 (ECF No. 60). But that new evidence merely bolsters Chevron's assertion that the Defendants "acted at the direction of federal officers in connection with their fuel *production and distribution* activities." Opp'n 10. The evidence does not purport to establish any connection between the Defendants' federally directed activities and their deceptive marketing and failures to warn, which is the only conduct that matters here for purposes of the nexus analysis.[4] In reaching this conclusion, I join

---

[4] As to the State's consumer protection claims under the Maine Unfair Trade Practices Act and the strict products liability statute, I have no trouble finding an insufficient nexus between that alleged conduct and the asserted federal activities. The State's common law claims, such as trespass, present a closer question. Whereas the consumer protection claims naturally integrate the "charged conduct"— deceptive marketing and failure to warn—the State must work a bit harder to incorporate that conduct into its common law claims. But the State does that work. For example, the complaint alleges trespass only to the extent it arises from the Defendants' "deception," "failure to include warnings," and "affirmative advertisement, marketing, promotion, advertisement, sale, and/or distribution of fossil fuel products" in Maine. Compl. ¶ 380. The State similarly limits its public nuisance claim to what is traceable to the Defendants' "advertising, marketing, and promoting" of fossil fuel products in Maine while "simultaneously" deceiving the public and failing to warn of those products' harms. Compl. ¶ 352.
 In sum, the State has carefully linked each asserted cause of action to the Defendants' deceptive conduct, which may well make the State's case harder to prove down the road. But that will be a question for a state court to decide because, by framing the complaint this way, the State avoids creating a basis for federal officer removal.

9

courts in multiple jurisdictions who have found the nexus requirement unsatisfied in similar climate-deception suits.[5]

### B. The Scope of the "Nexus" Inquiry

I briefly address Chevron's primary counterargument—which concerns the proper scope of the nexus inquiry—and explain why the argument fails.

Chevron makes no attempt to argue that the federal government influenced the Defendants' "charged conduct"—that is, their deceptive marketing of fossil fuel products and failure to warn consumers about climate change. Instead, it insists that I should broaden the scope of the nexus inquiry, which, unsurprisingly, leads to its desired result. NOR ¶ 10; Opp'n 14–18. According to Chevron, I should evaluate the existence of a nexus by considering the relationship between the asserted federal activities and, not just the "charged conduct" identified in the complaint, but also the plaintiff's "injuries" allegedly caused by the charged conduct. NOR ¶¶ 10–11, 16. Here, the State's injuries are climate change and its effects in Maine. Chevron's

---

[5] *See, e.g.*, *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 145 (2d Cir. 2023) (finding "a total mismatch" between the defendants' "actual production of fossil fuels" and its deceptive "marketing and public-relations campaigns" targeted by the state); *Anne Arundel Cnty., Md. v. BP P.L.C.*, 94 F.4th 343, 349 (4th Cir. 2024) ("Because the activities cited by the companies involve fossil fuel production rather than concealment or misrepresentation of information about fossil fuel products, those activities fail to show the required relatedness."); *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023) ("The Energy Companies' production of . . . fuel . . . , even if done at federal direction, bears little to no relationship with how they conducted their marketing activities to the general public."); *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 156 (D.C. Cir. 2023) ("[T]he complaint exclusively references statements made by the Companies that relate broadly to climate change, rather than to any specific activities conducted . . . in concert with the federal government."). *See also Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 47 (D. Mass. 2020) ("ExxonMobil's marketing and sale tactics were not plausibly 'related to' the drilling and production activities supposedly done under the direction of the federal government."); *City of Hoboken v. Exxon Mobil Corp.*, 558 F. Supp. 3d 191, 207 (D.N.J. 2021), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) ("[The] Complaint is focused on Defendants' decades long misinformation campaign . . . . Defendants do not claim that any federal officer directed them to engage in the alleged misinformation campaign.").

10

theory is that because the State's injuries are traceable to the Defendants' production, extraction, distribution, and sales of fossil fuels—which "inherently includ[e] such activities taken under the federal government's control"—there is a sufficient nexus for purposes of federal officer removal. NOR ¶ 16.[6]

Chevron's theory is at odds with the language of the federal officer removal statute and the First Circuit cases interpreting it. Under the statute, removal is proper only if the lawsuit in question is "for or relating to any *act* under color of" a federal office. 28 U.S.C. § 1442(a)(1) (emphasis added). As the Fourth Circuit has explained, "[i]t is the 'act' for which the defendant is being sued—not the plaintiff's entire civil action in a general sense—that must relate to the asserted federal duty." *Anne Arundel Cnty., Md. v. BP P.L.C.*, 94 F.4th 343, 348 (4th Cir. 2024).

Two cases cited repeatedly by Chevron—*Moore v. Electric Boat Corporation*, 25 F.4th 30 (1st Cir. 2022), and *Government of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174 (1st Cir. 2024)—illustrate that Chevron's proposed approach to the nexus analysis is at odds not just with the statutory language but also with established First Circuit law.

In *Moore*, the plaintiff was a U.S. Navy servicemember who worked as a technician on a submarine built by the defendant, a federal contractor. 25 F.4th at 32–33. After the plaintiff developed lung cancer from asbestos exposure, he sued the

---

[6] *See also* NOR ¶ 16 ("Such alleged injuries cannot arise from any purported deception untethered to any oil and gas production."); NOR ¶ 20 ("Plaintiff has brought suit against Defendants for the effects of all . . . oil and gas products . . . , which necessarily includes the combustion of products created for and at the direction of the federal government.").

11

defendant in state court for failing to adequately warn about asbestos or maintain a safe worksite. *Id.* The First Circuit found that the defendant satisfied the nexus needed for federal officer removal because there was evidence that the Navy had specifically "dictated" the defendant's "use of asbestos, workplace safety measures, and the posting of warnings." *Id.* at 36.

Likewise, in *Puerto Rico*, the Commonwealth sued a group of pharmaceutical defendants in state court for scheming to unlawfully inflate insulin prices while negotiating rebates and setting drug prices. 119 F. 4th at 179. The defendants removed the action to federal court, citing several federal contracts that required them to provide benefits to federal employees. *Id.* at 182. The First Circuit found a sufficient nexus between the charged conduct and the defendants' federally contracted activities in part because the contracts imposed specific requirements regarding rebate negotiations, such as "fil[ing] regular statements" about rebates, "credit[ing] carriers" for rebates, and giving the federal government "information related to its rebate agreements." *Id.* at 190.

Here, by contrast, Chevron has not alleged that the federal government had any influence at all on the Defendants' approach to marketing and advertising fossil fuels. Absent such allegations, there is no nexus between the charged conduct and the Defendants' federally directed activities.

Moreover, I am unpersuaded by Chevron's argument that, because courts "must 'credit' the removing party's 'theory of the case' for why removal under § 1442(a)(1) was appropriate," I must adopt Chevron's proposed approach to the

nexus inquiry. NOR ¶ 14 (quoting *Puerto Rico*, 119 F.4th at 184, 190). In *Puerto Rico*, the First Circuit explained that under the federal officer removal statute, courts must "credit" the removing party's theory where there are "factual disputes about the scope of a defendant's federal obligations." 119 F.4th at 189. This means that if the State and Chevron disputed the extent to which the federal government directed or supervised the Defendants' charged conduct (their allegedly deceptive marketing and communication practices), I would credit Chevron's allegations and find "an adequate threshold showing" for federal officer removal. *Id.* But as already discussed, there is no such dispute because Chevron does not claim the federal government had any involvement in or influence over the Defendants' marketing and communication activities. *Cf. id.* at 189 (crediting the defendant's allegations, disputed by the plaintiff, that its rebate negotiations were within the scope of its official federal duties); *Acker*, 527 U.S. at 432–33 (crediting the defendants' disputed reading of a tax ordinance that would determine whether the charged conduct shared a nexus with the defendants' federal activities).[7]

In sum, Chevron fails to meet the nexus requirement of the federal officer removal statute. Removal was therefore improper, and remand is mandatory.

---

[7] *See also Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 636 n.21 (D. Del.), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) (rejecting defendants' attempts "to freely rewrite the complaint . . . and then ask the Court to accept their 'theory of the case' for purposes of removal"); *City and Cnty. of Honolulu v. Sunoco LP*, No. 20-cv-00163-DKW-RT, No. 20-cv-00470-DKW-KJM, 2021 WL 531237, at *7 (D. Haw. Feb. 12, 2021) (declining to credit Defendants' theory of case because "Defendants' theory of the case is not a theory for *this* case").

13

## II.     Costs and Expenses Under 28 U.S.C. § 1447(c)

Having found that remand is mandatory, I now turn to the State's request to recover costs and expenses under 28 U.S.C. § 1447(c). Mot. 25. That statute permits a court, in ordering remand, to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The statute is meant to "deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005).

"Absent unusual circumstances, courts may award attorney's fees under [Section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141. That said, district courts "retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.* "Bad faith is not a necessary condition for such an award under this statute." *Net 2 Press, Inc. v. Nat'l Graphic Supply Corp.*, 324 F. Supp. 2d 15, 19 (D. Me. 2004); *accord Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 472 (S.D.N.Y. 2006) (courts may award costs and fees under Section 1447(c) even without "a finding of bad faith or frivolity").

The State argues that costs and fees are warranted because Chevron's removal arguments "have been twice rejected by the First Circuit . . . and universally rejected by federal courts across the country," Mot. 25, including recently by the Southern District of New York, which awarded fees to the plaintiff in a case involving similar parties, claims, and theories. *See City of New York v. Exxon Mobil Corp.*, 733 F. Supp. 3d 296, 314–16 (S.D.N.Y. 2024). The State asserts that the Defendants' tactic of

14

recycling the same arguments repeatedly rejected by other courts " 'can no longer be considered a good faith litigation strategy.' " Mot. 25 (quoting *New York*, 733 F. Supp. 3d at 315).

    I agree with the State, though I note that, because federal officer removal is a complex and evolving area of law, this is a close call. But Chevron and the other Defendants are highly resourced parties with highly skilled lawyers representing them. They have presented slightly—and cleverly—revised versions of the same removal arguments to at least a dozen federal courts across the country. And those courts have unanimously rejected the Defendants' arguments and instead have granted remand. *See, e.g.*, *Anne Arundel Cnty.*, 94 F.4th at 346 ("The appellants in these cases display a real commitment to the maxim, 'If at first you don't succeed, try, try, try again.' . . . By our count, [their] gambit has failed in at least ten cases already. The eleventh time is not the charm." (footnote omitted)). Therefore, under the specific circumstances of this case and based on the record before me, I find it is appropriate for the State to recover the reasonable costs and expenses it has incurred because of Chevron's improper removal.

    The parties are instructed to confer and attempt to reach an agreement on the amount of costs and expenses under 28 U.S.C. § 1447(c). If the parties are unable to reach an agreement by October 24, 2025, the State must file an application with this Court by November 21, 2025, specifying all costs and expenses incurred and providing supporting documentation of the requested amount.

## CONCLUSION

For the reasons set forth above, the State's motion to remand and its request for costs and fees (ECF No. 52) are both **GRANTED**.


SO ORDERED.

/s/ Nancy Torresen<br>
United States District Judge

Dated this 29th day of September, 2025.

16