UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STATE OF MAINE, | ) |
|           Plaintiff, | ) |
| v. | )    2:25-cv-00001-SDN |
| BP P.L.C., et al., | ) |
|           Defendants. | ) |

# ORDER

This matter comes before the Court on Defendants' motion to stay execution of the order remanding this case to state court pending their appeal of that order ("the Remand Order"), Defendants' motion to alter or amend judgment in the Remand Order pertaining to the award of attorneys' fees to the State, and the State's motion for said fees and expenses pursuant to 28 U.S.C. § 1447(c). Following the State's complaint against Defendants in state court, Defendants removed this case to federal court on a theory of federal officer removal under 28 U.S.C. § 1442(a)(1). The District Court then remanded the case to state court, finding that Defendants had failed to satisfy the requirements of the federal officer removal statute. The Court also granted the State's request to recover costs and expenses resulting from Defendants' removal under 28 U.S.C. § 1447(c) and ordered the parties to reach an agreement on the amount or for the State to submit an application for the same. Defendants now seek a stay of the Remand Order pending their appeal, and an amendment to the prior order awarding fees to the State. Following the parties' apparent inability to reach an agreement on the amount of fees and expenses owed, the State has now submitted its application for attorneys' fees and expenses. For the reasons that follow, both of the Defendants' motions are DENIED, and the State's motion for fees and expenses as outlined in its application for the same is GRANTED.

1

## BACKGROUND

In November 2024, the State of Maine (the "State") sued fourteen fossil fuel companies and their national trade associations (the "Defendants") in state court, asserting various causes of action centered around Defendants' alleged acts of knowingly deceiving Maine consumers and the public about the effects of climate change. *See* ECF No. 1-1. Specifically, the State alleges Defendants have known, at least since 1965, that the "unrestrained use of fossil fuel products" would cause global warming and result in "wide-ranging and costly consequences." *Id.* at ¶ 61. Despite this knowledge, the Defendants allegedly continued fossil fuel production while misleading the public regarding the effects of climate change.[1] *See id.* at ¶¶ 70–134. For example, the State alleges the Defendants "made misleading statements to consumers . . . about climate change, the relationship between climate change and fossil fuel products, and the urgency of the problem." *Id.* at ¶ 127. Additionally, another "key strategy" of Defendants' efforts was to "bankroll unqualified or unscrupulous scientists to advance fringe conclusions about climate change" and to "fund[] dozens of think tanks, front groups, and dark money foundations pushing climate change denial" on a national level. *Id.* at ¶¶ 128, 131.

Following the State's suit, two of the Defendants removed the case to federal court under the "federal officer removal statute," 28 U.S.C. § 1442, arguing the charged conduct was carried out under "federal direction, supervision, and control" and in performance of "critical and necessary functions for the U.S. military to further the national defense."

---

[1] Regarding the effects of climate change, the State alleges that Defendants have injured citizens of Maine in numerous ways, including "sea level rise, storm surge, extreme high tides and attendant flooding;" "damages to Maine's fishing and aquaculture industries;" "dangerously hot days and accompanying emergency room visits for heat-related illnesses; increased transmission of vector-borne diseases; reduced air quality; and the cascading social, economic, health, and other consequences of these environmental changes." *Id.* at ¶ 250.

ECF No. 1 at ¶ 19. On September 29, 2025, the District Court remanded the case to state court, finding that Defendants had failed to satisfy the requirements of 28 U.S.C. § 1442(a)(1) by failing to "establish any connection between the Defendants' federally directed activities and their deceptive marketing practices and failures to warn." ECF No. 84 at 9.

The federal officer removal statute permits any federal officer, or anyone "acting under" that officer, to remove to federal court a civil action "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). To warrant removal under § 1442(a)(1), the removing party must establish: "(1) that it was acting under a federal officer's authority, (2) that the charged conduct was carried out for or relating to the asserted official authority, and (3) that it will assert a colorable federal defense to the suit." *Gov't of P.R. v. Express Scripts, Inc.*, 119 F.4th 174, 185 (1st Cir. 2024) (quotation modified). In the Remand Order, the Court found that Defendants failed to satisfy the second "nexus" requirement of the statute by failing to demonstrate that the charged conduct regarding Defendants' acts of deceiving Maine consumers and the public about climate change related to Defendants' asserted official authority. ECF No. 84 at 8–10. Accordingly, the Court held the evidence provided by Defendants of newly asserted federal activities "does not purport to establish any connection between the Defendants' federally directed activities and their deceptive marketing and failures to warn," as alleged by the State. *Id.* at 9.[2] The Court further granted the State's request to recover costs and expenses under

---

[2] The decision to remand rested primarily on *Rhode Island v. Shell Oil Prods. Co., L.L.C.*, 979 F.3d 50 (1st Cir. 2020), *judgment vacated on other grounds*, 141 S. Ct. 2666 (2021) (mem.) ("*Rhode Island I*"). In *Rhode Island I*, the State sued numerous oil companies, including several of the same companies in the instant case, based on Defendants' "misinformation" and "antiscience" campaigns regarding the effects of climate change and their fossil fuel production activities. *Id.* at

3

28 U.S.C. § 1447(c), finding that the Defendants' basis for removal and federal jurisdiction was improper. *Id.* at 15.³

Defendants now move for a stay of the Remand Order pending their appeal, arguing that a stay would both preserve the meaningfulness of Defendants' appellate rights and prevent the inefficiencies of simultaneous litigation in multiple forums. *See* ECF No. 90 at 1. In response, the State contends that Defendants cannot demonstrate a likelihood of success on the merits of their appeal, as prevailing would require the First Circuit to overturn their own binding precedent and "depart from the unanimous decisions from the courts of appeals across the country." ECF No. 91 at 4. Defendants further move to amend the prior judgment and deny the award of costs and expenses to the State under 28 U.S.C. § 1447(c), arguing that the prior decision to award such fees constitutes a manifest error of law. ECF No. 89 at 2.

## DISCUSSION

### I.     Motion to Stay Execution of Remand

A stay of an order pending appeal is an "intrusion into the ordinary processes of administration and judicial review" and thus relief is not granted as "a matter of right." *Rhode Island v. Trump*, 155 F.4th 35, 41 (1st Cir. 2025) (quoting *New York v. Trump*, 133 F.4th 51, 65 (1st Cir. 2025)). To obtain a stay pending appeal, courts consider four factors:

---

54, 60. Following Defendants' removal to federal court under 28 U.S.C. § 1442(a)(1), the First Circuit affirmed the district court's subsequent remand to state court, holding there was "simply no nexus" between the charged conduct of misinformation alleged by Rhode Island and "anything the oil companies allegedly did at the behest of a federal officer." *Id.* at 60.

³ In reaching this holding, the Court noted that "because federal officer removal is a complex and evolving area of law," the question of fees was a "close call." ECF No. 84 at 15. However, the Court also noted that "Defendants are highly resourced parties with highly skilled lawyers representing them" who "presented slightly—and cleverly—revised versions of the same removal arguments," which have been unanimously rejected by federal courts across the country. *Id.* Accordingly, the Court found it appropriate for the State to recover reasonable costs and expenses it incurred because of Defendants' "improper removal." *Id.*

"(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors—likelihood of success and irreparable injury—"are the most critical." *Id.* at 434.

### A. Likelihood of Success on the Merits

Defendants contend they will succeed on appeal because they assert the Court erred when determining the "nexus" requirement of the federal officer removal statute by considering "only whether particular conduct that was the focus of Plaintiff's briefing—not Plaintiff's lawsuit as a whole—related to acts Defendants undertook at the direction of federal officers." ECF No. 91 at 4. Instead, Defendants assert the proper scope of the nexus inquiry is to consider the alleged injuries and requested relief stemming from the conduct charged by Plaintiff, that is, the Defendants' alleged acts of deceiving consumers and the public about climate change. *See id.* at 4–5. Defendants further argue that the Supreme Court's forthcoming decision in *Plaquemines Parish* will provide a definitive standard for the "relating to" prong of the nexus requirement of the federal officer removal statute. *Id.* at 5; *see also Chevron USA, Inc. v. Plaquemines Parish, La.*, No. 24-813 (U.S.), *cert. granted*, 2025 WL 1678985 (June 16, 2025).

However, aside from referencing the forthcoming Supreme Court decision and reiterating that federal officer removal is a "complex and evolving" area of law, Defendants make no attempt to distinguish this case from the First Circuit's holdings in *Rhode Island v. Shell Oil Prods. Co., L.L.C.*, 979 F.3d 50 (1st Cir. 2020), *judgment vacated on other grounds*, 141 S. Ct. 2666 (2021) (mem.) ("*Rhode Island I*"), and *Rhode*

*Island v. Shell Oil Prods. Co., L.L.C.*, 35 F.4th 44 (1st Cir. 2022) ("*Rhode Island II*"), which each squarely support remand and, as such, make appellate success unlikely. As explained in greater detail in the Remand Order, the First Circuit in *Rhode Island I* concluded there was "simply no nexus" between the charged conduct of the defendant oil companies' "misinformation campaign about the harmful effects of their products" as alleged by Rhode Island and "anything the oil companies allegedly did at the behest of a federal officer." *Rhode Island I*, 979 F.3d at 60.[4] Because the conduct alleged by the State here is nearly identical to the conduct at issue in the *Rhode Island* line of cases and because Defendants have not provided any reason to believe it is likely the First Circuit would overturn both prior decisions directly on point, they have failed to demonstrate a substantial likelihood of success on the merits of their appeal.

The fact that there may be a forthcoming Supreme Court decision in *Plaquemines Parish* does not alter this analysis. The Defendants have offered speculation built upon speculation, guessing not only how the Supreme Court might rule, but how the First Circuit might later interpret it. *See* ECF No. 90 at 6 ("*If* the Supreme Court agrees with . . . petitioners' arguments, this Court's analysis . . . would need to be revisited."); *id.* ("*Plaquemines Parish may* clarify how to conduct the nexus analysis."); *id.* at 7 ("Here, the First Circuit *may* agree with . . . petitioner's arguments or [*may*] be guided by a decision from the Supreme Court.") (emphasis added)). Indeed, even if the Supreme Court adopts the petitioners' position in *Plaquemines Parish*, the resulting decision would not be "directly relevant" here. In *Plaquemines Parish*, the Fifth Circuit affirmed

---

[4] In *Rhode Island II*, following remand from the Supreme Court, the First Circuit reviewed numerous other grounds raised by defendants for removal, but affirmed its prior reasoning in *Rhode Island I* regarding federal officer removal for Defendants' alleged misinformation campaign on the effects of climate change. *See Rhode Island II*, 35 F.4th at 53 n.6.

remand of the case to state court after holding that petitioners' wartime crude oil production was "unrelated" to the contractually mandated refining of that oil into aviation gasoline ("avgas") in part because the operative government contract *did not contain any explicit directive* pertaining to petitioners' crude oil production. *See Plaquemines Parish v. BP Am. Prod. Co.*, 103 F.4th 324, 337–39 (5th Cir. 2024). While the petitioners now advocate before the Supreme Court for a broader "connected or associated" nexus standard, *see* ECF No. 90 at 6–7, that standard is functionally identical to the one already applied in the Remand Order. *See* ECF No. 84 at 7 (noting a defendant satisfies the nexus requirement by showing the "charged conduct" shares a "connection or association with the asserted federally directed activities" (quotation modified)).

Unlike the Fifth Circuit's holding, the decision to remand here did not hinge on the absence of an explicit federal directive to engage in the charged conduct. Furthermore, *Plaquemines Parish* is fundamentally distinguishable because the plaintiffs there sought to impose liability based on oil production activities, rather than the deceptive conduct and misinformation alleged by the State here. To demonstrate a likelihood of success, "'[i]t is not enough that the chance of success on the merits be better than negligible.'" *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 44 (1st Cir. 2021) (quoting *Nken*, 556 U.S. at 434). Accordingly, the Defendants have failed to establish a substantial likelihood of success on the merits of their appeal.

### B. Irreparable Injury

Defendants next contend that, absent a stay of the Remand Order, they will suffer irreparable harm by being forced to litigate their federal appeal simultaneously with state court proceedings. *See* ECF No. 90 at 8–10. Defendants maintain the dual-track litigation resulting from the denial of a stay creates a "concrete and substantial potential for

7

inconsistent outcomes" between the federal and state court proceedings. *Id.* at 9 (quotation modified). Specifically, they argue if the First Circuit eventually determines removal was proper, the need to reconcile the state court record would create a "rat's nest of comity and federalism issues" for this Court to untangle. *Id.* (citing *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. 1:16-cv-534, 2016 WL 3346439, at \*4 (E.D. Va. June 16, 2016). In response, the State posits the Defendants' alleged harm of simultaneous litigation in two forums is "illusory" and does not constitute irreparable injury. ECF No. 91 at 8.

The Defendants' argument is unpersuasive. The First Circuit has repeatedly reversed remand orders while parallel state court proceedings were ongoing without issue, noting the "long and storied history of comity and cooperation between state and federal courts in this circuit." *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 81 (1st Cir. 2021); *see also Girouard v. Wells Fargo Bank, N.A.*, No. 19-1197, 2022 WL 4592893, at \*1 (1st Cir. Mar. 4, 2022). Although no formal procedural mechanism exists to return a wrongly remanded case to federal court, the First Circuit has expressed full confidence that, should the case not have been remanded, the district court can "enlist the state court's cooperation and restore the action to its own docket." *New Hampshire v. 3M Co.*, 132 F.4th 556, 559 (1st Cir. 2025) (quotation modified). Should the First Circuit determine the Remand Order was indeed issued in error, this Court is well-equipped to retrieve the case and resolve any resulting legal complexities.

Furthermore, Defendants' reliance on *Providence Journal Co. v. FBI* to argue "the denial of a stay will utterly destroy the status quo, irreparably harming appellants" is misplaced. 595 F.2d 889, 890 (1st Cir. 1979). In *Providence Journal Co.*, a stay was necessary because the surrender of confidential documents would have rendered the

appeal moot; once confidentiality is lost, it is "lost for all time." *Id*. Defendants face no such irreversible consequence here. Litigation in two forums is a common consequence of the removal statutes and does not constitute irreparable harm. *See, e.g.*, *City of Chi. v. BP P.L.C.*, No. 24-cv-02496, 2025 WL 3089140, slip op. at *2 (N.D. Ill. June 23, 2025) (noting that appellants challenging remand orders invariably litigate in two forums until the appeal is resolved). Finally, a party is "not, of course, entitled to a stay pending appeal without showing that their appeals have potential merit." *Providence Journal*, 595 F.2d at 890. Considering Defendants have failed to establish a substantial likelihood of success on the merits, their claim of irreparable harm must also fail.

### C. Injury to Plaintiff and Public Interest

Because the State is the opposing party, the third and fourth factors—harm to the opposing party and the public interest—merge. *See Nken*, 556 U.S. at 435. Both factors here weigh heavily against the issuance of a stay. As the State notes, further staying these proceedings—which were initiated over a year ago—inflicts continued injury to the State by delaying the resolution of its claims. Moreover, the public interest favors denying a stay. A stay would continue to impede Maine's ability to utilize the judicial system to address and mitigate the calamitous effects of climate change alleged in the State's complaint. ECF No. 90 at 11; *see* ECF No. 1-1 at ¶¶ 270, 404–19. Any potential procedural inconvenience to the Defendants is significantly outweighed by the State's and the public's interest in a timely adjudication of the complaint. Accordingly, having failed to establish the four factors required for a stay pending appeal, the Defendants' motion is denied.

### II.   Motion to Alter or Amend Judgment

"The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)

9

(quotation modified). To secure relief under Federal Rule of Civil Procedure 59(e),[5] a party must demonstrate either that previously unavailable evidence has surfaced or that the original judgment was premised on a manifest error of law or fact. *See Ira Green, Inc. v. Mil. Sales & Serv. Co.*, 775 F.3d 12, 28 (1st Cir. 2014). Crucially, a Rule 59(e) motion does not allow a movant to introduce evidence that was previously available. *Mancini v City of Providence ex rel. Lombardi*, 909 F.3d 32, 48 (1st Cir. 2018). Additionally, a party may not use a motion to alter or amend judgment to "raise arguments which could, and should, have been made before the judgment issued." *Harley-Davidson Motor Co., Inc. v. Bank of New England-Old Colony, N.A.*, 897 F.2d 611, 616 (1st Cir. 1990).

Defendants seek to alter or amend the award of fees to the State under 28 U.S.C. § 1447(c). Attorneys' fees may be awarded under § 1447(c) where the removing party "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Defendants argue the award of fees to the State constitutes a manifest error of law, asserting the Supreme Court's decision to grant certiorari in *Plaquemines Parish* "belies the notion that Defendants lacked an objectively reasonable basis for removing on those grounds here." ECF No. 89 at 5. Defendants further maintain their decision to remove was reasonable because they presented evidence regarding federal activities that was not considered by other courts previously rejecting similar removal arguments. *See id.* at 3. In response, the State maintains that the Court already considered the evidence raised by Defendants and found it established no connection between the Defendants' federally directed activities and their deceptive marketing conduct charged in this lawsuit. ECF No. 92 at 4 (citing the Remand Order,

---

[5] "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

10

ECF No. 84 at 15). The State further reiterates the irrelevance of *Plaquemines Parish* to the instant case and argues the decision will have no bearing on the validity of Defendants' decision to remove, nor provide any basis to conclude that Defendants had objectively reasonable grounds to believe removal was appropriate. *Id.* at 4–5.

I find Defendants have not satisfied the high burden required to justify the "extraordinary remedy" they seek under Rule 59(e). In the order awarding fees, the Court noted that "Defendants are highly resourced parties with highly skilled lawyers representing them" who "have presented slightly—and cleverly—revised versions of the same removal arguments to at least a dozen federal courts across the country," all of which "have unanimously rejected the Defendants' arguments and instead have granted remand." ECF No. 84 at 15. For similar reasons stated in the analysis of the motion to stay, the award of fees to the State does not constitute a manifest error of law. Federal case law across the country, including the First Circuit, is unambiguously clear: Defendants' removal arguments regarding their alleged misinformation and deceptive conduct are without merit. *See id.* at 10 n.5 (collecting cases rejecting similar removal arguments raised by Defendants here).

Furthermore, the Supreme Court's grant of certiorari in *Plaquemines Parish* does not establish that Defendants had an objectively reasonable basis for removal. As discussed above, the legal issues and conduct alleged in that case are fundamentally distinct from the misinformation-based conduct and claims at issue in this litigation. A defendant seeking removal on grounds already rejected by the First Circuit—thereby delaying litigation on the underlying complaint—is precisely the conduct § 1447(c) is intended to address. Accordingly, the Defendants' motion to alter or amend the prior judgment is likewise denied.

### III. Application for Fees and Litigation Expenses

In granting the State's request for fees and litigation expenses under 28 U.S.C. § 1447(c), the Court ordered parties "to confer and attempt to reach an agreement on the amount of costs and expenses" by October 24, 2025. ECF No. 84 at 15. If the parties were unable to reach an agreement by that date, the Court ordered the State to "file an application with this Court by November 21, 2025, specifying all costs and expenses incurred and providing supporting documentation of the requested amount." *Id.* The State has filed its application, requesting $349,090.00 in fees and $2,826.59 in litigation expenses. ECF No. 95-1 at 10. In response, Defendants assert the State's request for fees constitutes a "grossly excessive and unreasonable demand" and argue the State has failed to explain why specialized out-of-state counsel and numerous in-state attorneys and paralegals were necessary to challenge their decision to remove. ECF No. 98 at 3. For the reasons stated above in the denial of Defendants' motion to alter or amend judgment, I find the State's request for fees and expenses is reasonable and justified by the record.

The presumptive reasonable fee award is measured under the "lodestar method" by multiplying a reasonable hourly rate by the number of attorney hours reasonably expended on the litigation effort. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Pérez-Sosa v. Garland*, 22 F.4th 312, 321 (1st Cir. 2022). "The party seeking the award has the burden of producing materials that support the request," including "contemporaneous time and billing records," *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011), in addition to evidence of the "prevailing rates in the community for comparably qualified attorneys," *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 19 (1st Cir. 1988). In considering the State's evidence in support of its lodestar calculation and total fees and expenses sought,

I am mindful that "[f]lexibility is a hallmark of the lodestar approach," *Matalon v. Hynnes*, 806 F.3d 627, 639 (1st Cir. 2015), and that the First Circuit has "refrained from prescribing hard and fast rules for fee awards in order to ensure that district courts are not left to drown in a rising tide of fee-generated minutiae," *id.* (quotation modified). The goal is not "auditing perfection" and the district court "may use estimates" in reaching a reasonable fee award. *Pérez-Sosa*, 22 F.4th at 322 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Nonetheless, "the order awarding fees . . . must expose the district court's thought process and show the method and manner underlying its decisional calculus." *Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 337 (1st Cir. 1997).

In support of its motion, the State has provided the Court with explanations and rationales for each category of fee and expense sought as a result of Defendants' removal to federal court. For example, the State has sufficiently explained its need for hiring out-of-state counsel to challenge Defendants' removal, noting "(1) the State has limited resources and lacks expertise in this type of litigation; (2) Defendants are extremely well-resourced, litigious, and each is represented by multiple firms . . . ; and (3) there is no firm in Maine with comparable expertise or experience" to out-of-state firms retained by the State in conjunction with this litigation. ECF No. 95 at 2. Additionally, the State has provided documentation regarding the local rates for State attorneys and the out-of-state counsels' rates. *See id.* at 4–6. Finally, the State has detailed its good-faith effort to exclude from its fee request "hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 8 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 801 F. Supp. 804, 811 (D. Me. 1992); *see id.* at 9 ("Time entries were eliminated when they were not exclusive to removal and remand, when attorneys performed administrative tasks to assist paralegal staff, and when entries were otherwise vague or unclear. All three firms

13

made efforts to cost-effectively staff the removal and remand litigation by utilizing associates with lower billing rates, limiting partner review where feasible, and removing duplicative time entries." (quotation modified). I therefore find that the State's requested amount of fees and expenses is the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pérez-Sosa*, 22 F.4th at 321.

Defendants object to the State's calculation of fees and expenses as "grossly excessive and unreasonable," ECF No. 98 at 4, primarily on the basis that the Court's order granting the award of the fees was based in part on the premise that Defendants had "recycl[ed] the same arguments repeatedly rejected by other courts," ECF No. 84 at 15. Because the State's counsel has appeared in many of these cases and thus has extensive experience briefing the issues raised by Defendants' removal, Defendants argue the State has not met its burden of proof nor engaged in a good-faith effort to exclude all redundant and unnecessary time entries from its calculation of fees and expenses. *See* ECF No. 98 at 4, 6–7. Defendants argue the Court should reduce the State's requested fees by 25% as it was "entirely unnecessary to use three separate law firms to prepare the remand briefing, particularly given the Plaintiff's primary argument for fees . . . was that these issues have been extensively litigated . . . and decided multiple times before." *Id.* at 9.

For the reasons already described at length by this Court and others, I find dubious Defendants' argument regarding the reasonableness or necessity of the State's efforts to challenge their decision to remove. Defendants cannot be allowed to remove this case to federal court, on improper grounds, forcing the State to expend time and resources challenging the Defendants' removal, and then back the State into a corner by arguing its efforts to retain counsel to adequately prepare, brief, and respond to Defendants' arguments was somehow unnecessary or unreasonable. The fee-shifting provision

14

contained in 28 U.S.C. § 1447(c) exists to deter or sanction conduct such as Defendants' conduct before this Court now. Accordingly, I find the State is entitled to fees and expenses equaling the product of a reasonable number of hours expended on this case at a reasonable hourly rate, which the State has sufficiently enumerated.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay Execution of the Remand Order Pending Appeal, ECF No. 90, and Defendants' Motion to Alter or Amend Judgment, ECF No. 89, are **DENIED**. Additionally, the State's Motion for Fees and Litigation Expenses, ECF No. 95, is **GRANTED**, and I award the State costs totaling $349,090.00 in fees and $2,826.59 in expenses.

**SO ORDERED.**

Dated this 9th day of January, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**